UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLUB ITALIA SOCCER & SPORTS
ORGANIZATION, INC.,

        Plaintiff,

vs.

Case No. 05-CV-72338

HON. GEORGE CARAM STEEH

CHARTER TOWNSHIP OF
SHELBY, MICHIGAN,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises out of plaintiff Club Italia Soccer & Sports Organization, Inc.'s ("Club Italia") complaint that defendant Charter Township of Shelby, Michigan ("Township") violated Club Italia's constitutional rights when it awarded a lease to Soccer City for the development of soccer facilities on Township property. The matter is presently before the court on defendant's motion for summary judgment. For the reasons stated below, defendant's motion for summary judgment is GRANTED.

### FACTUAL BACKGROUND

Starting in 2002, representatives of Soccer City contacted Shelby Township to discuss the development and construction of soccer facilities on Township-owned properties. The Township requested Soccer City to prepare a formal proposal. Soccer City received authority from the Township to conduct environmental tests on the property to determine its suitability for development.

After the completion of environmental tests it was determined that the Township property contained flood plains, substantial regulated wetlands, and was not suitable for development.  A second site owned by the Township was discussed and environmental tests were conducted.  It was determined that the site was suitable for the proposed development.  Soccer City proposed to construct seven outdoor soccer fields and one indoor soccer field enclosed by an inflatable dome.

Soccer City and representatives of Shelby Township engaged in negotiations for the lease of the property to Soccer City and the terms pursuant to which the facilities would be constructed.

On December 8, 2004, representatives of Soccer City presented a formal proposal to the Shelby Township Planning Commission for the construction of soccer fields and an indoor dome.  In March, 2005, plaintiff contacted the Shelby Township clerk to obtain copies of the proposal submitted by Soccer City.  On April 5, 2005, plaintiff's President, Jack Ciraulo, attended the regular meeting of the Shelby Township Board and addressed the Board concerning plaintiff's interest in submitting a proposal for the development of the property.

On April 11, 2005, the Board conducted a work session where it discussed plaintiff's request to submit a proposal to develop the property.  The Board agreed to permit interested parties to submit bid proposals within a three week time frame.  A successful bidder, other than Soccer City, would be required to reimburse Soccer City for the environmental testing which Soccer City previously performed on the property. Township Supervisor, Ralph L. Maccarone's "Invitation to compete with existing offer for lease of Township land" stated that:

> In addition to all the above, if you are chosen as the tentative choice, you must agree to reimbursement of all costs to the current proposer of the enclosed lease agreement, Shelby Soccer City, Inc., a Michigan Corporation in an amount currently calculated at $68,426.00, subject to verification, and in the event of any dispute, to be subject of binding arbitration under American Arbitration Association Rules before award of rights as a tenant to this property can be made.

On May 6, 2005, the Township Deputy Clerk opened the only bid received, which was that submitted by Soccer City. The contract for the proposed development was awarded to Soccer City. Under the terms of the proposed lease, Soccer City would pay Shelby Township one dollar a month for 25 years for the use of the property, and would construct soccer facilities on the property. Shelby Township could use the facilities from 8:00 a.m. until 3:00 p.m., Monday through Friday. Shelby Township would not have any use of the property after school hours or on weekends.

When plaintiff contacted entities to provide surveys, design plans, and engineered drawings, they were told that three weeks was not enough time. Plaintiff's counsel wrote to Supervisor Maccarone, requesting additional time to submit a proposal, but never received a response. Plaintiff filed its lawsuit claiming that defendant violated its constitutional rights of due process and equal protection of law.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248,

4

252. Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

ANALYSIS

**Standing**

In order to invoke federal jurisdiction, there must be an actual case or controversy.  First, a plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (1) concrete and particularized, and (2) actual or imminent.  Second, there must be a causal connection between the injury and the conduct complained of.  Third, it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision.  In response to a summary judgment motion, the plaintiff can no longer rest on mere allegations, but must set forth by affidavit or other evidence, "specific facts" which for purposes of the summary judgment motion will be taken as true.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

**Due Process**

The United States Constitution provides that no personal shall be deprived of "life, liberty or property, without due process of law."  United States Const., Am XIV.  The issue in this case is whether a potential bidder on a public improvement contract has a property or liberty interest in the bidding process so as to invoke the constitutional protections afforded by due process.  In Board of Regents v. Roth, 408 U.S. 564 (1972), the United States Supreme Court held that a professor hired for one year did not have a property interest in continued employment under the due process clause of the

Constitution. Rather, a plaintiff needs an independent source to create a property interest, for instance, state law.

The Michigan Supreme Court established the "disappointed bidder" rule in Talbot Paving Co. v. City of Detroit, 109 Mich. 657 (1896). The court held that while the charter of Detroit provided that the City had a duty to let the contract to the lowest responsible bidder, the provision was not passed for the benefit of the bidder, but as a protection to the public. Id. at 660. The court next held that "as a bidder, the complainant has no standing." City of Detroit v. Wayne Circuit Judge, 128 Mich. App. 438 (1901).

In order to have standing to sue for losing out on a contract, a plaintiff must show that the benefit he seeks to enjoy is one to which he is entitled. As long as the city counsel may award the contract to another bidder if it finds that doing so is in the public interest, the losing bidder has no standing to sue. See Malan Construction Corp. v. Board of County Road Commr's, 187 F.Supp. 937 (E.D. Mich. 1960); Kasom V. City of Sterling Heights, 600 F.Supp. 1555 (E.D. Mich. 1985); United of Omaha Life Ins. Co. v. Solomon, 560 F.2d 31 (6th Cir. 1992).

In Solomon, the court noted that "Michigan statutory and case law neither requires that the lowest bidder be awarded a state contract nor creates a property interest in disappointed bidders on state contracts." Solomon, 560 F.2d at 34. "A 'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded. Id.

6

Plaintiff argues that its injury arises from the fact that defendant did "open" the bids to entities other than Soccer City, but acted deliberately not to treat all parties similarly.  Defendant allegedly treated plaintiff in an unequal and constitutionally prohibited manner from a similarly situated organization, and caused plaintiff to suffer an economic loss.  Plaintiff argues that it is not a "disappointed bidder", but rather, as a bidder for a government contract, it has an economic interest at stake.  Owen of Georgia, Inc. v. Shelby County, 648 F.2d 1084 (6th Cir. 1980).  However, Owen of Georgia involved Tennessee law which limited the local government's power to reject bids.  This is not the law in Michigan

In Kasom, the court recognized that if a governmental unit had no discretion in awarding the benefit, that is, by law it had to be awarded to some party, a constitutionally protected property interest for the unsuccessful bidder would arise.  However, in Kasom, the court held there was no property right established when a contract was awarded to the lowest responsible bidder.

In this case, there is no state or local law requiring the Township to bid the project at all.  In fact, the Township did not commit itself to award the contract to any bidder.  Soccer City approached the Township about the project, and the Township agreed to consider any bids received.  As an unsuccessful potential bidder, plaintiff lacks standing to bring its claim for violation of rights under the Due Process Clause.

**Equal Protection**

The Supreme Court has stated that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  City of Sleburne v.

Sleburne Living Ctr., 473 U.S. 432, 439 (1985).  In the context of economic legislation and government action, the Equal Protection Clause is subject to the rational basis test.

In this case, plaintiff maintains that it was given only three weeks to submit a bid although Soccer City had much longer.  In addition, plaintiff avers that it had to comply with more stringent bid requirements than Soccer City.  As with its due process claim, plaintiff cannot demonstrate the existence of a property interest at stake.  The invitation to submit bids contained no specifications at all, and merely said that bids would be considered by the Township Board.

Plaintiff also claims a liberty interest in conducting business at the subject property.  In each of the cases cited by plaintiff, a liberty interest was found in a government-regulated field, where the government restricted an entity's ability to engage in trade.  See, Wilkerson v. Johnson, 699 F.2d 325 (6th Cir. 1983) (State Board of Barber Examiners prevented plaintiff from obtaining barber's license); Sanderson v. Village of Greenhills, 726 F.2d 284 (6th Cir. 1984) (municipality withheld "amusement device" permit to operate billiards parlor).  This is not the case with Shelby Township, which merely agreed to consider bids for a soccer facility after being approached by Soccer City.

Finally, plaintiff has failed to show that the Township acted in an arbitrary and capricious manner in awarding the development agreement to Soccer City.  Given the fact that the Township does not require competitive bidding on agreements for the lease of Township-owned property, and no state law requires competitive bidding, plaintiff cannot demonstrate a violation of equal protection.

CONCLUSION

Plaintiff has not demonstrated that it has any constitutionally-protected property or liberty interest in the bid process or award of the lease to Soccer City.  Plaintiff therefore does not have standing to assert constitutional claims against the Township in this case.  Finally, plaintiff cannot demonstrate that the Township's actions in awarding the property development agreement to Soccer City violated plaintiff's rights to equal protection of law.  For these reasons, defendant's motion for summary judgment is GRANTED.


　　　　　　　　　　　　　　　　s/George Caram Steeh
　　　　　　　　　　　　　　　　GEORGE CARAM STEEH
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated:  September 6, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on September 6, 2005, by electronic and/or ordinary mail.


　　　　　　　　　　　　　　　　s/Josephine Chaffee
　　　　　　　　　　　　　　　　Secretary/Deputy Clerk